UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FRANCIS PALARDY | § | |
| | § | |
| v. | § | CIVIL NO. 4:21-CV-626-SDJ |
| | § | |
| AT&T SERVICES, INC., ET AL. | § | |

**MEMORANDUM ADOPTING REPORT AND
RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

This employment discrimination case arises from Plaintiff Francis Palardy's termination from a temporary work assignment. In support of his claims under the Americans with Disabilities Act and Rehabilitation Act, Palardy alleges almost no facts directed toward Defendant Experis US, Inc. ("Experis") specifically. It follows that Palardy has failed to state a claim against the company upon which relief can be granted. The Court therefore adopts the Magistrate Judge's Report and Recommendation, (Dkt. #71), overrules Palardy's objections, (Dkt. #75), and dismisses the claims against Experis with prejudice.

**I. BACKGROUND**

Palardy alleges that the Defendants discriminated against him based on a severe hearing disability in violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act.[1] (Dkt. #46 ¶¶ 1, 67–73) (citing 42 U.S.C. § 12101 *et seq.*). But

---

[1] Palardy asserts claims under the Rehabilitation Act, (Dkt. #46 ¶¶ 1, 74–77) (citing 29 U.S.C. § 794), and what he refers to as a "pendant claim" under the Texas Commission on Human Rights Act. (Dkt. #46 ¶ 1) (citing TEX. LABOR CODE § 21.001 *et seq.*). The Rehabilitation Act claims are directed toward Defendants AT&T Service, Inc., and International Business Machines Corporation only—not Experis—on the ground that those Defendants have received sufficient government funding to be covered under the Act's

1

Palardy provides few allegations directed toward Experis specifically—as opposed to the other Defendants. He does not allege, for example, any facts explaining his relationship with Experis (except that Experis emailed him about certain job opportunities), any facts suggesting that Experis had control or authority over the employers who allegedly terminated him, or any facts suggesting that Experis had the ability to provide a reasonable accommodation for his disability and neglected to do so. It is not immediately clear from reviewing the amended complaint what kind of company Experis even is—though from the parties' briefing, it appears that Experis is a staffing agency that recruits technology professionals for Defendants AT&T Services, Inc., ("AT&T") and International Business Machines Corporation ("IBM"), among other companies. (Dkt. #48-1 at 3 n.1); (Dkt. #51 at 2–5).

The amended complaint alleges only that Experis conducted some kind of investigation into whether AT&T and IBM terminated Palardy based on his severe hearing disability or failed to provide him reasonable accommodations. (Dkt. #46 ¶ 63). But the timing and nature of that investigation is unclear. According to the amended complaint, Experis ultimately concluded that no discrimination had occurred and continued to contact Palardy about new job opportunities as they became available. (Dkt. #46 at 63). In addition to the investigation, the amended complaint also alleges that, after Palardy completed some kind of programming test

---

prohibition against federal discrimination. (Dkt. #46 ¶¶ 74–77). The Texas Commission on Human Rights Act claim is governed under the same standards as the ADA claims. *Clark v. Charter Commc'ns, L.L.C.*, 775 F.App'x 764, 767 & n.10 (5th Cir. 2019); *Cruz v. R2Sonic, LLC*, 405 F.Supp.3d 676, 686 (W.D. Tex. 2019) ("[C]ourts apply the same standards to disability discrimination, retaliation, and failure-to-accommodate claims brought under both [the ADA and Texas Commission on Human Rights Act].").

2

with IBM (presumably as part of a job application process), he informed Experis that he would need accommodations for future tests. (Dkt. #46 at 20). Palardy does not allege that he failed the programming test or that he suffered any consequences from a lack of reasonable accommodations.

The Report concluded that Palardy's claims against Experis should be dismissed. (Dkt. #71). And because Palardy had already been provided an opportunity to amend his complaint, the Report recommended a dismissal with prejudice, as opposed to a dismissal with leave to amend. (Dkt. #71 at 13 n.5). Palardy objected to the Report. (Dkt. #75).

## II. LEGAL STANDARD

The Court reviews a magistrate judge's report and recommendation de novo following a timely objection. 28 U.S.C. § 636(b)(1). The objecting party must specifically identify the magistrate judge's findings to which he objects. *Id.* When the objecting party offers frivolous, general, or conclusory objections, the Court may disregard those objections. *Nettles v. Wainright*, 677 F.2d 404, 410 & n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

Similarly, the Court need not address objections at length when they simply "rehash" or "mirror" arguments that were already addressed in the report and recommendation. *See Mark v. Spears*, No. 6:18-CV-309, 2022 WL 363586, at *1 (E.D. Tex. Feb. 7, 2022); *see also Nickelson v. Warden*, No. 1:11-CV-334, 2012 WL 700827, at *4 (S.D. Ohio Mar. 1, 2012) ("[O]bjections to magistrate judges' reports

3

and recommendations are not meant to be simply a vehicle to rehash arguments set forth in the petition.").

### III. DISCUSSION

Palardy has not pleaded any facts explaining Experis's role in the alleged discrimination against him. It follows that Palardy has failed to state a claim against the company under the ADA, his objections to the contrary notwithstanding. The Court also finds that, because Palardy was provided ample opportunity to correct these deficiencies, the amended complaint should be dismissed without leave to amend.

### A. The Amended Complaint Fails to State a Claim Against Experis Under the Americans with Disabilities Act.

At the outset, the Court finds that Palardy has failed to state an employment discrimination claim against Experis under the Americans with Disabilities Act. That is true no matter the theory alleged: wrongful termination, failure to accommodate, improper examinations, or any other theory that can be discerned in the amended complaint.

Palardy cannot prevail under any of these theories without demonstrating Experis's role in the alleged discrimination against him. Assuming that Experis is a staffing agency, as the parties' briefing indicates,[2] it can be held responsible for a

---

[2] If Experis is not a staffing agency, that confusion underscores the amended complaint's failure to articulate a "short and plain statement of the claim[s]" asserted against Experis. FED. R. CIV. P. 8(a)(2); *see also Vanderbol v. State Farm Mut. Auto Ins. Co.*, No. 4:19-CV-119-SDJ, 2020 WL 6866393, at *3 (E.D. Tex. Nov. 23, 2020) (collecting cases for the proposition that a complaint may be dismissed when it is unwieldy or unintelligible), *aff'd*, No. 20-40875, 2021 WL 2577611 (5th Cir. Mar. 1, 2021).

4

client's discriminatory actions when it is a joint employer with the client and either (1) participates in the alleged discrimination or (2) fails to take corrective measures in its control despite knowing of the alleged discrimination or having reason to know of the alleged discrimination. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 229 (5th Cir. 2015); *High v. City of Wylie*, No. 4:18-CV-364, 2019 WL 3557238, at *5 (E.D. Tex. Aug. 5, 2019); *see generally* U.S. EQUAL EMP'T OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: APPLICATION OF THE ADA TO CONTINGENT WORKERS PLACED BY TEMPORARY AGENCIES AND OTHER STAFFING FIRMS, 2000 WL 33407189 (2000).[3]

### i. Wrongful Termination

The amended complaint does not state a claim against Experis under a wrongful termination theory. To state a claim for wrongful termination or for any other adverse employment action under the ADA, the plaintiff must establish the

---

[3] In deciding whether a staffing agency constitutes a joint employer, courts consider two broad factors: the agency's "control" over the plaintiff and the "economic realities of the relationship." *See Burton*, 798 F.3d at 227–28 (applying the "hybrid economic realities/common law control test" to determine whether defendants were joint employers under the ADA (quotations omitted)). Between these factors, control is the more important—it concerns the agency's ability to hire, terminate, supervise, or set schedules for the plaintiff. *Deal v. State Farm Cty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 119 (5th Cir. 1993). The economic realities of the relationship, however, concerns the agency's ability to pay the plaintiff's salary, withhold taxes, provide benefits, and set the terms and conditions of the employment. *Id.*

Even when a staffing agency does not qualify as a joint employer, some authorities suggest that it can still be held responsible for discrimination under the ADA under certain circumstances—such as when the agency interfered with the plaintiff's ADA rights and when it qualifies as an "employment agency." U.S. EQUAL EMP'T OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: APPLICATION OF THE ADA TO CONTINGENT WORKERS PLACED BY TEMPORARY AGENCIES AND OTHER STAFFING FIRMS, 2000 WL 33407189, at *2 (2000). The Court need not address those possibilities here, however, because—no matter Palardy's relationship with Experis—he has not alleged that Experis contributed to the alleged discrimination against him as would be required to support a disability discrimination claim against the company.

following elements: (1) that he has a disability; (2) that he was qualified for the job he had or the job he applied for; and (3) that he was subject to an adverse employment decision because of his disability. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).

The third element is the sticking point in this case. It can be satisfied against a staffing agency not only when the agency participates in the adverse employment decision, but also when the agency fails to take prompt corrective measures within its control to address the adverse employment decision. *Burton*, 798 F.3d at 229. Depending on the circumstances of the case, prompt corrective measures could include:[4] (1) making the client aware of the misconduct; (2) asserting the staffing firm's commitment to protect its workers from harassment and discrimination; (3) insisting on prompt investigation and corrective measures; or (4) offering the worker an alternative job assignment at the same pay rate. U.S. EQUAL EMP. OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: APPLICATION OF EEO LAWS TO CONTINGENT WORKERS PLACED BY TEMPORARY EMPLOYMENT AGENCIES AND OTHER STAFFING FIRMS, 1997 WL 33159161, at *11.[5]

---

[4] Although not delineated among the specific corrective measures a staffing agency can take, refusing to do business with a client that violates anti-discrimination and harassment laws could also be a necessary corrective measure for the staffing agency to avoid liability. U.S. EQUAL EMP. OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: APPLICATION OF EEO LAWS TO CONTINGENT WORKERS PLACED BY TEMPORARY EMPLOYMENT AGENCIES AND OTHER STAFFING FIRMS, 1997 WL 33159161, at *11. The EEOC guidance provides that if the staffing agency knows of a complaint against a client, it is not sufficient to merely inform the client of the complaint. *Id.* The staffing agency should also "decline to assign any other workers until the client [undertakes] the necessary corrective and preventative measures." *Id.*

[5] Federal courts often consult the EEOC compliance guidelines when interpreting the ADA. *See Burton*, 798 F.3d at 228 ("We have repeatedly consulted the EEOC Compliance Manual when interpreting the ADA.").

As explained in the Report, Palardy has offered no facts demonstrating that Experis participated in any alleged wrongful termination, adverse employment decision, or failed to take corrective measures in its control. It is not clear to what extent Experis was even on notice of the circumstances surrounding the alleged wrongful termination, except that Experis allegedly learned of "concerning," (Dkt. #46 ¶ 63), statements made by an AT&T manager, Martin McEnroe, regarding Palardy's performance and abilities. Instead of ignoring the manager's statements, Experis investigated them to determine whether "the decision to terminate [Palardy was] based on hearing impairment." (Dkt. #46 at 63). Experis concluded that no discrimination had occurred and continued sending Palardy job opportunities as they became available. As to what Experis could have done differently to prevent or repair the allegedly wrongful termination based on the information available to it, the amended complaint is silent.

The amended complaint's allegations, therefore, fail to place Experis on notice of the claim asserted against it and the grounds on which it rests. Under the Federal Rules of Civil Procedure, a plaintiff cannot open the doors to the federal courthouse through "unadorned, the defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Nor can the plaintiff prevail through "naked assertions devoid of further factual enhancement." *Id.* (quotations and brackets omitted). To the contrary, courts "retain the power to insist upon some specificity in pleading" before allowing a substantial factual controversy to proceed. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 558, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007) (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17, 103 S.Ct. 897, 74 L.Ed. 2d 723 (1983)). Here, because Palardy has not alleged any specific facts supporting a wrongful termination theory against Experis, the Court finds that Palardy has failed to state an ADA claim against Experis under that theory.

All of Palardy's objections supporting a wrongful termination or other adverse employment action theory either rehash arguments addressed in the Report or veer in irrelevant directions. For example, Palardy invokes the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 142 S.Ct. 2228, 213 L.Ed.2d 545 (2022), overturning *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), for the proposition that courts have "a long history of treating disabled people badly" and therefore should uphold the rights extended to disabled people through the ADA, in keeping with *Dobbs'* "[concern] for disabled fetuses." (Dkt. #75 ¶ 11). He also accuses the magistrate judge of "ignore[ing] issues of national security" and flags for the Court's attention that Google's artificial intelligence technology will soon "become sentient." (Dkt. #75 ¶ 12). Because these objections do not overcome the amended complaint's core deficiency—that it fails to establish Experis's role in the alleged discrimination against Palardy—the objections are overruled.

### ii. Reasonable Accommodations

The amended complaint does not state a claim under a failure-to-accommodate theory either. A failure to accommodate claim has three elements: (1) that the plaintiff was a qualified individual with a disability; (2) that the defendant knew of the plaintiff's disability and consequential limitations; and (3) that the defendant

8

failed to make reasonable accommodations for those limitations. *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). The Defendant's responsibility to provide a reasonable accommodation is not triggered, however, until the plaintiff requests one. *LHC Grp., Inc.*, 773 F.3d at 699. The request need not be formal or even identify a specific requested accommodation. *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009); *see also* U.S. EQUAL EMP. OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: REASONABLE ACCOMMODATION AND UNDUE HARDSHIP UNDER THE AMERICANS WITH DISABILITIES ACT, 2002 WL 31994335, at *4 (stating that an employee may make a request for an accommodation in "plain English" and does not have to "mention the ADA or use the phrase 'reasonable accommodation.'"). Instead, the request must alert the defendant to the need for an accommodation and spark the "interactive process of identifying" what accommodation, if any, will address the plaintiff's limitations. *Cutera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). Even when a plaintiff is otherwise entitled to a reasonable accommodation, the defendant need not provide one if it would impose an undue hardship. *Chevron Phillips Chem. Co., LP*, 570 F.3d at 614.

A staffing firm must provide a reasonable accommodation when it is both notified of the need for the accommodation as a joint employer client and the ability to provide that accommodation is in its control. U.S. EQUAL EMP. OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: APPLICATION OF THE ADA TO CONTINGENT WORKERS PLACED BY TEMPORARY AGENCIES AND OTHER STAFFING FIRMS, 2000 WL 33407189, at *6–7. Even when a staffing firm lacks the ability to provide a reasonable accommodation, it may

be required in some circumstances to inform the joint employer client of the need for a reasonable accommodation and take remedial steps should the client refuse to provide it. *Id.* at *9. Remedial steps could include offering the plaintiff the next available position for which he is qualified or refusing to assign additional workers to that client. *Id.* In some circumstances, an employee may request a reasonable accommodation after the need for the accommodation has elapsed. 29 C.F.R. § 1630, App. (2016). If a plaintiff is unable to complete a test due to vision impairment, for example—and did not know of the need for an accommodation before taking the test— the plaintiff may request the accommodation after the fact. *Id.* The defendant would be required to honor that request, for example, by allowing the plaintiff to retake the test with enlarged typeface. *Id.*

Here, the amended complaint does not allege that Palardy requested a reasonable accommodation from Experis, with the sole exception that after a programming test with IBM, Palardy requested that all tests be done by video conferencing. But Palardy has not alleged any details explaining the significance of the programming test at IBM or suggesting that the lack of a reasonable accommodation had any consequences. To the contrary, the programming test appears to be part of a pre-employment screening process for a job that Palardy eventually obtained.[6]

---

[6] The Interpretive Guidance on Title I of the ADA clarifies that the requirement that an employer provide alternative, accessible test formats does not apply to employment tests that "require the use of sensory, manual, or speaking skills" if the purpose of the test is to measure those skills. 29 C.F.R. § 1630, App. (2016). However, such a test cannot be used to exclude someone with a disability unless "the skill was necessary to perform an essential function of the position and no reasonable accommodation was available to enable the

Without any details establishing that Experis denied Palardy a reasonable accommodation without which he could not obtain or perform his job responsibilities, the Court finds that Palardy cannot prevail against Experis under a reasonable accommodations theory. Palardy does not offer any objections supporting his reasonable accommodation theory, aside from the objections that solely rehash arguments addressed in the Report. The objections concede that, of the theories advanced in the amended complaint, the reasonable accommodations theory is the "weakest."

### iii. Improper Examinations

The amended complaint similarly fails to advance an ADA claim against Experis based on improper examinations. For a current employee, an improper examination means a medical examination or an inquiry into the nature and severity of an employee's disability, "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Here, in his objections to the Report, Palardy attempts to characterize AT&T and IBM's password security requirements as effectively "literacy tests" akin to those used to "prevent certain people from voting in the South." (Dkt. #75 ¶ 5). But the amended complaint does not allege any facts to support that bold allegation. To the contrary, the amended complaint alleges only that AT&T and IBM required employees to use multiple passwords and authenticate those passwords with special keys—both of which appear to be a business necessity for which the prohibition on discriminatory

---

individual to perform that function, or the necessary accommodation would impose an undue hardship." *Id.*

11

examinations does not apply. Even if the requirements do not constitute a business necessity, the amended complaint fails to establish how those security requirements constitute an examination directed toward his disability or how Experis contributed to the discrimination.

Palardy also asserts that McEnroe—the same AT&T manager who made allegedly problematic statements regarding Palardy's performance and abilities—made certain comments about Palardy's cochlear implant and asked him during a meeting if he could hear. But the amended complaint provides scant details surrounding these allegations. It does not appear that McEnroe's statements rose to the level of an examination directed toward Palardy's disability. And if the statement did rise to that level, the amended complaint fails nonetheless to plausibly allege that Experis was on notice of the statements and failed to take corrective measures within its control.

**B. The Claims Against Experis Should be Dismissed with Prejudice.**

The Court also finds that the claims against Experis should be dismissed with prejudice and that Palardy should not be granted leave to amend his complaint. Although Palardy represents himself in this action without the benefit of an attorney, that does not overcome the Court's interest in efficiently administering this case and avoiding undue delay.

Before the deadline for filing amended pleadings lapsed Palardy had already received notice of the deficiencies in his complaint, and he was provided an opportunity to cure them. Far from curing the deficiencies and delivering a short and plain statement of the claims against Experis, however, the amended complaint

remains lengthy and disorganized—of the sort that are frequently dismissed with prejudice in federal court.

## IV. CONCLUSION

It is, therefore, **ORDERED** that the Report and Recommendation of the United States Magistrate Judge, (Dkt. #71), is hereby **ADOPTED** and Palardy's Objections, (Dkt. #75), are **OVERRULED**. The claims against Experis are **DISMISSED with prejudice.**

This case will remain **STAYED** pending the Court's resolution of Defendants' motions for summary judgment. (Dkt. #79, #80).

**So ORDERED and SIGNED this 26th day of January, 2024.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE